IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**WILLOWOOD USA, LLC**, an Oregon
limited liability company,

        Plaintiff,

        v.

**ALLIED WORLD ASSURANCE
COMPANY**, a Delaware corporation,
**COLONY INSURANCE COMPANY**,
a Virginia corporation, and **CRUM &
FORSTER SPECIALTY INSURANCE
COMPANY**, an Arizona corporation,

        Defendants.

**Civ. No. 6:15-cv-01050-MC**

**OPINION AND ORDER**

**MCSHANE, Judge:**

For the second time, this court is asked to assess the duties owed by the insurers to an

insured as applied to the litigation in the case of *Repar Corp. v. Willowood USA* ("*Repar*").

Initially, in *Crum and Forster Spec. Ins. Co v. Willowood USA* ("*Crum and Forster*"), the court

was asked to determine the insurers' duty to defend Willowood in *Repar*. Willowood, now

having settled the *Repar* litigation for a sum of $453,625, brings this action seeking

indemnification from the defendant insurers.

Defendants move for summary judgement, arguing that the claims made in the *Repar*

litigation do not implicate coverage under their respective policies with Willowood. In this

respect, the argument mirrors my previous finding in *Crum and Forster* that the insurance

companies had no duty to defend Willowood. Because Willowood has failed to present further

factual evidence showing that the settlement in *Repar* was based on facts independent of the

pleadings that would give rise to coverage, the Joint Motion for Summary Judgement, ECF No.

19, is GRANTED.

## BACKGROUND

### I.     The *Repar* Litigation

Because Defendants' motion relies in part on factual allegations in the *Repar* litigation, I

look to the allegations brought in the complaints in that action, as discussed in *Crum & Forster*,

2014 WL 5473816 at *1–2 (D. Or. Oct. 27, 2014).

The Repar Corporation is a family-owned distributor of agricultural pesticides with three

primary stockholders, Bhushan Mandava, his wife Leela Mandava, and their son Madhu

Mandava. In 2006, Repar obtained a primary registration for technical tebuconazole, an active

ingredient in certain agricultural pesticides. In 2008, Repar began distributing an agricultural

pesticide containing tebuconazole under the trade names TEBUCON 45 DF (a dry formula

fungicide) and TEBUCON 3.6F (a liquid fungicide). On August 23, 2011, Repar obtained

trademark registration No. 4,015,686 for the TEBUCON mark for various types of pesticide

products.

Between 2000 and 2004, Willowood's founder, Brian Heinze, founded and operated

AgValue. During that time, Heinze worked with Bhushan Mandava to obtain regulatory approval for

various AgValue products. Heinze sold AgValue in November 2004 and entered into a non-compete

agreement with the buyer, United Phosphorus.

In late 2007, Heinze contacted the Mandavas and proposed that they form a joint

venture. Pursuant to a five-year non-disclosure agreement dated November 5, 2007, the Mandavas

exchanged confidential business information such as product formulas, information relating to

markets and customers, and production details, with Heinze. The non-disclosure agreement prohibited Heinze from using any confidential Repar business information for any purpose other than the joint venture discussions with the Mandavas. At approximately the same time, Heinze met repeatedly with Vijay Mundhra, who operated a business named Willowood, Ltd. in Hong Kong.

In November 2009, Heinze and Mundhra formed Willowood USA, a corporation in the business of distributing agricultural pesticides. Despite partnering with Mundhra in lieu of Repar, Heinze proposed that Willowood and Repar jointly manufacture TEBUCON 3.6F and TEBUCON 45 DF. Repar agreed, on condition that Willowood purchase the technical tebuconazole for its TEBUCON products from Repar. Heinze signed a non-disclosure agreement dated December 9, 2009.

In 2011, Willowood stopped purchasing its technical tebuconazole from Repar, but continued to use the TEBUCON mark.

Repar then filed an action before this Court seeking damages and injunctive relief for breach of contract, breach of implied contract, quasi-contract/unjust enrichment, and violations of the Lanham Act, 15 U.S.C. §§ 1051–127.

## II.     *Crum & Forster* and the Applicability of the Policies to the *Repar* Claims

In *Crum & Forster*, this Court determined that Repar's first and second amended complaints did not invoke a duty to defend for damages covered as "personal and advertising" injuries. Willowood argued that these advertising injuries are founded in provisions of the policies that cover injury related to "disparagement" (subprovision d) and "use of another's advertising idea in your advertisement" (subprovision f).

In evaluating the policy provision covering disparagement injury, the Court assessed Repar's underlying claims of trade libel, defamation, and quasi-contract unjust enrichment. The Court determined that the allegations in both complaints did not state a claim for disparagement

and, additionally, that the gravamen of the allegations sounded in trademark and were therefore excluded from coverage for "personal and advertising" injuries.

Turning to the policy provisions that cover injury for "use of another's advertising idea in your advertisement," the Court determined that some of Repar's claims plausibly alleged injury originating, at least in part, in Willowood's use of Repar's mark ("the TEBUCON mark") in advertisements. However, in declining to extend a duty to defend, the Court found that "a causal connection is necessary to confine the scope of coverage to the reasonable expectation of the parties." As I explained:

> [T]he gravamen of the underlying action is premised on Willowood's use of the TEBUCON mark. Whether that use constitutes a violation of contract or trademark, the relevant resulting harm is caused by the misuse of the mark, not by the advertising itself.

*Crum & Forster*, 2014 WL 5473816 at *11.

The Court then assessed each plausible claim and determined each lacked the necessary causal connection (i.e., each injury could have occurred independent and irrespective of any hypothetical advertising activities).

The Court also assessed the applicability of the Breach of Contract Exclusion and the Intellectual Property Exclusion within the underlying policy, and held that the Breach of Contract Exclusion would also apply to Repar's claim for breach of implied contract, had such a claim been covered as a "personal and advertising" injury. The Court additionally held that the Intellectual Property Exclusion applied to Repar's claims for Federal Trademark Infringement, Counterfeiting and Unfair Competition, and provided a plain meaning definition of trademark that captured Repar's underlying allegations.

## STANDARD OF REVIEW

This Court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* The court reviews evidence and draws inferences in the light most favorable to the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a *genuine issue for trial.*" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original).

## DISCUSSION

As explained above, Willowood files this claim alleging the Insurers breached their duty to indemnify after losing the duty to defend action in *Crum & Forster* and subsequently settling the *Repar* litigation. Willowood's complaint asserts: "The damages sought in the Underlying Action were for 'personal and advertising injury' as defined in the [Insurers'] policies . . . ." Pl.'s Compl., 8, ECF No. 1-1. This is the same argument that Willowood put forth in *Crum & Forster.*

Each insurer provides a duty to indemnify for "personal and advertising injuries" in their respective policies with Willowood, as expressed in the following provisions:

\*      \*      \*

2.      Insuring Agreement B – Personal and Advertising Injury

> a. We will pay, in excess of the Deductible shown in the Declarations, those sums that the insured becomes legally obligated to pay as "damages" because of "personal and advertising injury" to which this insurance applies. . . .

12, ECF No. 24-1 (Colony and Crum & Forster Policies).

\* \* \*

COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

1. Insuring Agreement

> a. We will pay those sums that the insured becomes legally obligated to
> pay as damages because of "personal and advertising injury" to which the
> insurance applies. We will have the right and duty to defend the insured
> against any "suit" seeking those damages. . . .

10, ECF No. 24-3 (Allied Policy).

I.      **The Duty to Indemnify**

The duty to indemnify is distinct from the duty to defend, and it requires a separate

factual analysis. *See Bresee Homes, Inc. Farmers Ins. Exchange*, 353 Or. 112, 114 (2012); *see*

*also Ledford v. Gutoski*, 319 Or. 397, 403 (1994) ("even when an insurer does not have a duty to

defend based on the allegations in the initial complaint, the facts proved at trial on which liability

is established may give rise to a duty to indemnify."); *American States Ins. Co. v. Dastar Corp.*,

318 F.3d 881 (9th Cir. 2003) ("Liability for indemnity, unlike liability under the duty to defend,

derives from factual determinations separate from the allegations in the complaint. As a result,

[an insurer] could still have a duty to indemnify even if it did not have a duty to defend.").

A.      **The Duty to Indemnify Following a Decision on the Duty to Defend**

The Ninth Circuit has upheld a grant of summary judgment against a duty to defend

claim and an accompanying *sua sponte* dismissal of a duty to indemnify claim. *Harris Thermal*

*Transfer Products, Inc. v. James River Ins. Co.*, 2010 WL 2942611 (D. Or. July 19, 2010)

(Papak, J.), *aff'd*, 457 Fed. Appx. 660 (9th Cir. Nov. 2, 2011). In his duty to defend analysis in

*Harris Thermal*, Judge Papak performed an excellent analysis and found three applicable

coverage exclusions. The Ninth Circuit, in a memorandum opinion, affirmed Judge Papak's

holding, explaining:

. . . we affirm the district court's *sua sponte* dismissal of the indemnity claim because the underlying action plainly is not covered by the policy in light of these two coverage exclusions. As we have been informed that the underlying action has settled, there is no further information to be gleaned that could give rise to a duty to indemnify under this policy. *See Ledford v. Gutoski*, 319 Or. 397, 877 P.2d 80, 84 (1994) (noting that, where an insurer does not have a duty to defend based on the facts alleged in the complaint, it may still be possible to demonstrate a duty to indemnify based on the facts proven at trial); *see also Weber v. Chicago Title Ins. Co. of Oregon*, 169 Or. App. 24, 7 P.3d 714, 716 (2000) (noting that an insurer's duty to defend generally is broader than its duty to indemnify).

457 Fed. Appx. 660, 662 (9th Cir. Nov. 2, 2011); *see also Spada v. Unigard Ins. Co.*, 80 Fed. Appx. 27 (9th Cir. 2003), *citing STK Enters., Inc. v. Crusader Ins. Co.*, 171 Or. App. 9 (2000)) (affirming award of summary judgment on duty to defend and denial of summary judgment on duty to indemnify, and noting that "[s]ome issues of fact remain because the duty to indemnify, unlike the duty to defend, arises from facts proved at trial.").

In *Mutual of Enumclaw Ins. Co. v. Jonas*, 35 Fed. Appx. 556 (9th Cir. 2002), the Ninth Circuit reversed a summary judgment award granted by Judge Hogan in an insured's favor as to the duty to defend and the duty to indemnify. The Ninth Circuit concluded that the underlying suit did not fall within the contract's coverage, and was otherwise excluded. The Court further explained: "[n]o duty to indemnify exists if no claim in a complaint falls within a policy's coverage." *Id.* at 558. I find this holding relevant to this case. I have already ruled in *Crum & Forster* that Willowood did not establish coverage under the portions of the underlying policy regarding advertising activities, I now analyze the duty to indemnify in the context of such a ruling and based on the separate standard for that duty.

**B. The Duty to Indemnify in Light of an Underlying Settlement**

When an insured enters into a settlement, an insurer's duty to indemnify is based on the facts that formed the basis for that settlement. *Bresee Homes, Inc. v. Farmers Ins. Exchange*, 353

Or. 112, 126 (2012); *Chartis Spec. Ins. Co. v. Am. Contractors Ins. Co.*, 2014 WL 3943722 (D. Or. Aug. 12, 2014) (King, J.) ("we must look to the allegations in the underlying lawsuit and any evidence developed in defending or supporting those allegations.").

Willowood argues that the relevant facts forming the basis for the settlement in *Repar* were that Willowood "knew of facts showing that Repar would at trial attempt to establish causation between the use of the advertising idea [the TEBUCON mark] and Repar's damages." Pl.'s Response, 7, ECF No. 38. This would apparently solidify Repar's breach of implied contract claim, according to Willowood's interpretation of the opinion of this Court. *Id.* Willowood's arguments and position misconstrue this Court's initial holding on the causation element of the breach of implied contract claim, improperly conflate the use of the TEBUCON trademark—an "advertising idea"—with "advertising activities," and ignore the applicable aspects of this Court's analysis in *Crum & Forster*, at *11.

This Court, on October 16, 2015, converted the Insurers' motion to dismiss into a motion for summary judgment in order to allow Willowood to proffer any factual evidence suggesting that the settlement in *Repar* was based on facts related to covered damages. In other words, Willowood was asked to show that settlement was based not on the uncovered claims found in the *Repar* complaint, but rather upon extrinsic facts that could potentially trigger the Insurers' duty to indemnify. In response, Willowood offers declarations from Christopher Kent, Willowood's retained legal counsel, ECF No. 40, and Brian Heinze, Willowood's CEO and President, ECF No. 39.

Mr. Kent asserts that Willowood would not have settled *Repar* but for a "significant risk" arising from the breach of implied contract claim which Willowood maintains is covered under the Insurers' policies. Kent Decl., ¶ 5, ECF No. 40. This risk, according to Mr. Heinze, was due to a perceived likelihood that a jury would find against Willowood based on its use of the

TEBUCON mark. Heinze Decl., ¶ 3, ECF No. 39. Willowood also provides a report prepared by an economic expert, Ken Fruits, Ph.D., that speaks to Willowood's potential damages exposure. Of note, Dr. Fruits believed a jury could find nearly $900,000 in damages resulting from "Lost profits from tebuconazole product sales." Expert Rep. of Eric Fruits, ECF No. 40-2. In his declaration, Mr. Kent implies that this assessment relates to covered advertising activities, although Dr. Fruits' report makes no mention of advertisements in reaching his conclusion. *Compare id.* at 2, 5, *with* Kent Decl., ¶ 13, ECF No. 40. While the proffered declarations shed light on Willowood's litigation strategy in settling *Repar*, I find that the declarations are insufficient to constitute evidence creating a question of fact as to whether the claims in *Repar* were covered under the policies.

The declarations regarding Willowood's strategy for settlement in the *Repar* litigation do not create coverage under the Policies' provisions for advertising injury and they do not defeat the Policies' breach of contract exclusion. I find that Willowood has failed to raise a question of material fact as to whether the underlying settlement was for covered damages.

## CONCLUSION

Based on the foregoing, Defendants' Joint Motion for Summary Judgment, ECF No. 19, is GRANTED. A judgment shall be entered in this case.

IT IS SO ORDERED.

Dated this ‍24 day of February, 2016.

Michael McShane
United States District Judge